# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MAGNACROSS LLC,<br><br>               Plaintiff,<br>   v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,<br><br>               Defendant. | CASE NO. 2:15-cv-844-JRG-RSP<br>(LEAD CASE) (CONSOLIDATED)<br>**PATENT CASE** |

## MAGNACROSS LLC'S REPLY CLAIM CONSTRUCTION BRIEF

David R. Bennett
DIRECTION IP LAW
P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail: dbennett@directionip.com

**ATTORNEY FOR PLAINTIFF
MAGNACROSS LLC**

Dated: April 1, 2016

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF CITATIONS ......................................................................................................... ii

TABLE OF EXHIBITS ........................................................................................................... iii

ARGUMENT ............................................................................................................................. 1

      A.     The Preambles are Non-Limiting (Claims 1 and 12) ................................................ 1

      B.     "Data Sensors" (Claims 1 and 12) ............................................................................ 3

      C.     "Local Data Sensors"/"Said Local Sensors" (Claims 1 and 12) .............................. 5

      D.     "Data Processing Means" (Claims 1 and 12) ........................................................... 6

      E.     "Channel"/"Communications Channel" (Claims 1 and 12) ..................................... 7

      F.     "Sub-Channel" (Claims 1 and 12) ........................................................................... 9

      G.     "Allocating Data From Said Local Data Sensors to Respective Ones or Groups of Said Sub-Channels in Accordance with the Data Carrying Capacities of Said Sub-Channels" / "Allocating of Data From Said Local Data Sensors to Respective Ones or Groups of Said Sub-Channels in Accordance with…Data Rate Requirements From Said Local Sensors" (Claims 1 and 12) .................................................................................................... 9

      H.     Data Rate "Differing Substantially" / "Substantially Different" Data Rate (Claims 1 and 12) ................................................................................................. 10

CONCLUSION ....................................................................................................................... 12

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Altiris, Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed.Cir. 2003) ........................................................................................ 1

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
   246 F.3d 1368 (Fed.Cir. 2001) ........................................................................................ 1

*Eaton Corp. v. Rockwell Intern. Corp.*,
   323 F.3d 1332 (Fed.Cir. 2003) .................................................................................... 3, 4

*Ecolab Inc. v. Envirochem, Inc.*,
   264 F.3d 1358, 1367 (Fed.Cir. 2001) ............................................................................ 11

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed.Cir. 2005) ........................................................................................ 4

*Schumer v. Lab. Computer Sys., Inc.*,
   308 F.3d 1304 (Fed.Cir. 2002) .................................................................................... 1, 4

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
   944 F.2d 870 (Fed.Cir. 1991). ................................................................................ 2, 3, 6

*Verve, LLC v. Crane Cams, Inc.*,
   311 F.3d 1116 (Fed.Cir. 2002) ...................................................................................... 11

## TABLE OF EXHIBITS

Exhibit A      United States Patent No. 6,917,304

Exhibit B      Excerpt of Original Claims from Application Serial No. 09/402,262, which issued as the '304 Patent, dated October 1, 1999 (MAG000366-371)

Exhibit C      Restriction/Election Requirement for Serial No. 09/402,262 dated June 10, 2004 (MAG000054-58)

Exhibit D      Response to Restriction Requirement - Election for Serial No. 09/402,262 dated July 2, 2004 (MAG000051-53)

Exhibit E      First Office Action for Serial No. 09/402,262 dated October 4, 2004 (MAG000040-47)

Exhibit F      Amendment and Response to First Office Action for Serial No. 09/402,262 dated December 14, 2004 (MAG000030-38)

Exhibit G      Notice of Allowability dated February 11, 2005 (MAG000022-25)

Exhibit H      Certificate of Correction dated September 6, 2005, for U.S. Patent No. 6,917,304 (MAG000012)

Exhibit I      *Clear With Computers v. Hyundai Motor America, Inc.*, Case No. 6:09-cv-479, slip. op. (E.D. Tex. Jan. 5, 2011)

Exhibit J      *Orion IP, LLC v. Staples, Inc., et al.*, Case No. 2:04-cv-297-LED, slip op. (E.D. Tex. Dec. 15, 2005)

Exhibit K      Asserted claims 1 and 12 with disputed claim terms and phrases in bold/underline

Pursuant to the Court's Docket Control Order and P.R. 4-5, Plaintiff, Magnacross LLC ("Magnacross"), serves this reply claim construction brief on Defendants BLU Products, Inc., and T-Mobile USA, Inc. (collectively "Defendants").

**ARGUMENT**

As explained below, Defendants' responsive claim construction brief does not support their proposed constructions.

### A. The Preambles are Non-Limiting (Claims 1 and 12)

- "1. A method of wireless transmission of data in digital and/or analogue format through a communications channel from at least two data sensors to a data processing means"

- "12. Apparatus for wireless transmission of data in digital and/or analogue format through a communications channel from at least two local data sensors to a data processing means"

| Magnacross | Defendants |
|---|---|
| The preambles are not a limitation. | The preambles are a limitation. |

Defendants have not shown that the preambles should be construed to be limitations. The preambles do not provide essential features or breathe life into the claims, they do not recite essential and necessary structure, and the antecedent basis of claim terms in the preambles does not turn the preambles into limitations.

The preambles do not provide essential features or breathe life into the claims because they only set out the purpose of the invention: a method of or apparatus for wireless transmission of data through a communications channel from data sensors to a data processing means. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1372 (Fed.Cir. 2003); *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375 (Fed.Cir. 2001). There is no description of functional attributes of a device that performs the methods or how the device is to operate with respect to those features in the preambles. *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1310

(Fed.Cir. 2002). As explained in Magnacross's opening brief, the body of claims 1 and 12 set out the complete invention. (Dkt. No. 204 at 10).

Defendants' sole argument that the preambles provide essential features or breathe life into the claims is the use of the term "wireless" in the preamble. (Dkt. No. 216 at 5-6). However, this merely sets forth a purpose of the method (wireless transmission) and does not explain how the device is to operate with respect to the wireless aspect of the transmission. (Dkt. No. 204 at 10). The steps in claim 1 are performed the same regardless of the wireless transmission and the apparatus in claim 12 operates the same regardless of the wireless aspect of the transmission. *Bristol-Myers*, 246 F.3d at 1375. Nonetheless, the use of solely the word "wireless" does not make the entire preamble a limitation; at most, it raises the issue of whether "wireless" is a limitation.

Defendants also incorrectly argue that the preambles recite the requisite structure for the asserted claims: "a method of [or apparatus for] wireless transmission of data in digital and/or analogue format through a communications channel from at least two [local] data sensors to a data processing means." (Dkt. No. 216 at 6). The preambles do not provide any necessary structure for the claimed steps or apparatus. Claim 1 discloses steps directed to dividing the channel into sub-channels and allocating data to those sub-channels for transmission. Claim 12 similarly describes a multiplexer structure with a controller for dividing the channel into sub-channels and allocating data to those sub-channels for transmission, and a transmitter. Rather than providing the requisite structure, the preambles only "indicate a reference point to fix the direction of movement" of the signal from the two sensors to the data processing means. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 880 (Fed.Cir. 1991).

2

Finally, Defendants incorrectly argue that finding the antecedent basis for certain claim elements in the preambles render the preambles limitations. (Dkt. No. 216 at 6-7). The case law cited by Defendants only states that such an antecedent basis in the preamble "may" act as a limitation. *Eaton Corp. v. Rockwell Intern. Corp.*, 323 F.3d 1332, 1339 (Fed.Cir. 2003). In *Eaton*, the preamble was found to be a limitation because the claims "require the manipulation of particular structures that are identified and described only by the preamble, during a particular sequence of events defined only by the preamble." 323 F.3d at 1340. In the patent at issue in this case, the preamble in claim 1 does not define a particular sequence of events defined only in the preamble and the steps in claim 1 do not manipulate structures that are only identified and described by the preamble. Transmission from the data sensors, the communications channel, and the sequence of events for the transmission are described in the body of claim 1 and not the preamble. Similarly, the apparatus of claim 12 (multiplexer, control means, and transmitter) is fully described in the body of claim, rather than the preamble. Again, the preamble only "indicate a reference point to fix the direction of movement" of the signal from the two sensors to the data processing means, rather than a requisite structure. *Vaupel*, 944 F.2d at 880. The preambles are therefore not limitations.

### B. "Data Sensors" (Claims 1 and 12)

| Magnacross | Defendants |
|---|---|
| "sensors that may transmit raw data for subsequent processing or may incorporate some degree of primary data processing whereby the data received at the main processor is partially or totally preprocessed, or raw data" | No construction necessary. |

Defendants argue that "data sensors" does not require construction despite a clear statement in the specification regarding the scope of the term "data sensors."

First, Defendants' incorrectly contend that Magnacross's proposal of a construction for "data sensors" (a term first found in the preamble) is inconsistent with arguing that the preamble is not a limitation. Defendants confuse the preamble being a limitation with whether a term found in both the preamble and the body of the claim is a limitation. Magnacross does not dispute that a term found in the body of the claims is a limitation; however, that does not make the preamble a limitation merely because the term is also found in the preamble. *Schumer*, 308 F.3d at 1306, 1310 ("point of origin," angle of rotation," and "scale" are limitations but preamble is not a limitation despite containing those terms); *Altris*, 318 F.3d at 1368, 1371-72 ("booting" and "setting" are limitations but the preamble is not a limitation despite containing those terms); *also Eaton*, 323 F.3d at 1341 (explaining that in *Schumer* the preamble was not a limitation although terms found both in the preamble and body of the claim were limitations). Magnacross's request for construction of "data sensors" is therefore irrelevant to whether the preamble is a limitation.

Second, Defendants also incorrectly request that the Court ignore the clear disclosure in the specification regarding the scope of "data sensors" because it will only "serve to confuse the jury." (Dkt. No. 216 at 8). Defendants argue that the construction is confusing because terms in the construction do not appear in the language of the asserted claims. (*Id.*). However, constructions always contain phrases outside of the claim language otherwise no constructions would be required. For example, the law allows the Court to look at the specification, prosecution history, and extrinsic evidence for constructions, which necessarily include phrases outside of the claim language. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed.Cir. 2005). Defendants have no other basis for arguing that the scope from the specification is confusion.

Third, Defendants also contend that the clear disclosure of the scope in the specification should be ignored because the specification is discussing the term "local data sensor" rather than "data sensor." (Dkt. No. 216 at 8). This is a distinction without a difference. The term "data sensor" should be construed the same whether it is viewed as a separate term or as part of "local data sensor." The specification provides a clear disclosure of the scope of "data sensors" and there is no legal or factual basis for disregarding it. Magnacross therefore respectfully requests that the Court adopt Magnacross's proposed construction.

C.  **"Local Data Sensors"/"Said Local Sensors" (Claims 1 and 12)**

| Magnacross | Defendants |
|---|---|
| Plain and ordinary meaning | data sensors located nearby the data processing means (e.g., within the same room) |

Defendants provide no argument for why their proposed definition for "local" is correct.[1] Furthermore, Defendants do not dispute that they are seeking to limit the construction of these terms to a single embodiment disclosed in the specification. Defendants' proposed construction should therefore be rejected.

Rather than supporting their proposed construction, Defendants contend that the term "local" must be construed otherwise the term is "boundless" and indefinite. (Dkt. No. 216 at 10-11). However, Defendants provide no evidence or argument as to why the term "local" is boundless or indefinite if it is given its plain and ordinary meaning. Defendants make no attempt to refute Magnacross's evidence that the disclosures of the specification are consistent with the plain and ordinary meaning of "local." For example, the specification uses the term "local" to describe that the sensors and data processing means must be close enough to allow for wireless transmission of data, which is consistent with the ordinary meaning of the term within the

---

[1] Defendants acknowledge that they seek the definition of "local" rather than "local data sensors" or "said local sensors." (Dkt. No. 16 at 9)

5

claims. (Ex. A at col. 1:4-10, 15-18, 23-29; col. 2:1-13; col. 3:2-11; col. 4:10-13, 36-45; col. 6:64 – col. 7:8; col. 7:30-45, 59-62; col. 8:20-35; Figs. 2-6). This provides a clear scope of the term "local" in the context of "local data sensors" and "said local sensors." No construction is therefore necessary.

D. **"Data Processing Means" (Claims 1 and 12)**

| Magnacross | Defendants |
|---|---|
| Term is only found in the non-limiting preamble, so no construction is necessary. Otherwise, it used according to its plain and ordinary meaning. | personal computer or workstation configured to receive decoded sensor data and provide it to virtual serial ports for analysis and/or display (under § 112 ¶ 6) |

"Data processing means" is only used in the preamble of the claims and therefore is not a limitation and does not require construction.

Defendants do not dispute that the term "data processing means" is only used in the preamble. In fact, Defendants only rely on the preamble and do not point to any step in claim 1 or part of the apparatus in claim 12 that require a data processing means. Defendants cannot point to the body of the claims because the "data processing means" is not required by the claims to transmit data wirelessly through the sub-channels. In claim 1, the steps of dividing the channel into sub-channels and transmitting the data through the sub-channels do not refer to a data processing means. And, in claim 12, the multiplexer, control means and transmitter of the claimed apparatus do not refer to a data processing means. Instead, the reference to the "data processing means" in the preambles only "indicate a reference point to fix the direction of movement" of the signal from the two sensors to the data processing means. *Vaupel,* 944 F.2d at 880. The steps of claim 1 and the apparatus of claim 12 perform in the same way regardless of whether the "data processing means" actually receives the data and therefore "data processing means" is not a limitation. *Bristol-Myers*, 246 F.3d at 1375 ("reducing hematologic toxicity" is a

6

purpose of the method in the preamble and not a limitation because the steps are the same regardless of whether the patient experiences a reduction of hematologic toxicity). The term "data processing means" therefore does not require construction.

Even if the Court were to find that "data processing means" is a limitation, Defendants do not refute Magnacross's citations demonstrating that their proposed construction is narrower than the disclosures in the specification. As explained in Magnacross's opening brief, the specification describes "data processing means" as computers, controllers, microcontrollers, circuits, and workstations that receive raw data, partially pre-processed data, or totally processed data from sensors for further processing. (Ex. A at Abstract, col. 1:23-29; col. 4:41-45; col. 5:15-17, 22-33; col. 6:7-11, 17-25; Fig. 1 (24, 38, 40)). Furthermore, the data processing means is not limited to "provid[ing] [data] to virtual serial ports for analysis and/or display" and also provides the received raw data, partially pre-processed data, or totally processed data for analysis, displaying, data stream decoding, signal conditioning, duplexing, multiplexing, signal conversion from analog to digital, allocating to virtual serial ports, and preparing data for further transmission or routing. (Ex. A at col. 1:30-34, 51-54; col. 4:41-45, 56-60; col. 5:8-17, 28-34, 38-42, 53-59; col. 6:1-25, 41-46; Figs. 1-6). Defendants' response makes no attempt to refute that the disclosures in the specification are broader than Defendants' proposed construction. Defendants' proposed construction is therefore improper because it is narrower than the disclosures in the specification.

E.     **"Channel"/"Communications Channel" (Claims 1 and 12)**

| Magnacross | Defendants |
|---|---|
| Plain and ordinary meaning. | a wireless information route between a single transmitter and a single receiver |

Defendants contend that the terms are unreasonably broad but never explain why they are unreasonably broad or why Defendants' proposed construction is correct.

Defendants' concede that their proposed construction is reading limitations into the claims. Magnacross's opening brief stated that Defendants seek to improperly limit the terms to a preferred embodiment by contending that there can only be a single transmitter and a single receiver. Defendants' response never disputes this and instead acknowledges that "a single transmitter and a single receiver" is an "example" or a "practical application" in the specification. (Dkt. No. 216 at 14). The phrase "a single transmitter and a single receiver" would therefore improperly limit the scope of "channel" or "communications channel."

"Wireless" is also not an appropriate limitation for "channel" or "communications channel." Defendants misconstrued Magnacross's argument with respect to the word "wireless." Magnacross is not arguing that the communications channel can be entirely wired, instead the communications channel can be wired in addition to being wireless. (Dkt. No. 204 at 14). Defendants do not dispute that that the specification discloses that the communications channel can include circuitry combining the data. (Ex. A at col. 5:22-37; col. 6:11-15; Figs. 2-3, 4-5). Defendants' construction, which implies that the communications channel can only be wireless, is therefore incorrect.

The remaining phrase in Defendants' proposed construction, "information route," is not argued by Defendants. Defendants provide no explanation as to how they arrived at the phrase "information route" or why it is appropriate for the disputed terms.

Defendants' proposed construction is therefore incorrect and the terms should be given their plain and ordinary meaning.

### F.     "Sub-Channel" (Claims 1 and 12)

| Magnacross | Defendants |
|---|---|
| Plain and ordinary meaning. | a sub-division of a wireless channel |

Defendants do not dispute that the claims already describe that that sub-channel is a "division of [a] channel." Instead, Defendants argue that the sub-channel must be wireless because the channel is wireless. As explained above, the specification discloses that the channel can be in part wired in addition to being wireless. (*Supra* §E). No construction of "sub-channel" is therefore required because it is already described in the claims.

### G.     "Allocating Data From Said Local Data Sensors to Respective Ones or Groups of Said Sub-Channels in Accordance with the Data Carrying Capacities of Said Sub-Channels" / "Allocating of Data From Said Local Data Sensors to Respective Ones or Groups of Said Sub-Channels in Accordance with…Data Rate Requirements From Said Local Sensors" (Claims 1 and 12)

| Magnacross | Defendants |
|---|---|
| Plain and ordinary meaning. | allocating [allocate] data from each sensor to one or more sub-channels whose data carrying capacity closely matches that sensor's data rate requirements |

Other than their proposal of the phrase "closely matches," Defendants never argue that their proposed construction is supported by the claim language or the specification. For example, although claim 1 requires allocation in accordance with "the data <u>carrying capacities</u> of said <u>sub-channels</u>," and claim 12 requires allocation in accordance with the "data <u>rate requirements</u> from said <u>local sensors</u>," Defendants' proposal requires allocation solely with respect to the "<u>sensor's data rate requirements</u>." This is not consistent with the language of claim 1. Defendants' proposed construction is therefore not correct.

With respect to "closely matching," Defendants never explain why that particular phrase is appropriately part of a construction. Instead, Defendants argue that the examples in the

9

specification are "contextual and susceptible to numerous interpretations." (Dkt. No. 216 at 17). This does not make Defendants' proposed language correct. In fact, Defendants never explain whether "closely matched" would cover the examples in the specification. The claims and the specification do not limit the terms to "closely matched" data rate requirements or carrying capacities. Defendants' proposed construction is therefore incorrect. The terms are therefore clear and should be accorded their plain and ordinary meaning.

### H. Data Rate "Differing Substantially" / "Substantially Different" Data Rate (Claims 1 and 12)

| Magnacross | Defendants |
|---|---|
| Plain and ordinary meaning. | Indefinite. |

Defendants incorrectly argue that the intrinsic evidence does not describe how data rates "differ[ ] substantially" or are "substantially different." As explained in Magnacross's opening brief, the specification and prosecution history describe that the terms "differing substantially" and "substantially different" are used to distinguish (a) sensors that may have insubstantially different data rates and therefore could use channels with the same data-carrying capacity from (b) sensors with substantially different data rates such that unequal sub-channels will reduce over- or under-capacity in the system. (Dkt. No. 204 at 25-26; *e.g.*, Ex. A at col. 1:57 – col. 2:1; col. 2:5-13; col. 3:11-18 (for example, data rate requirements can differ by an order of magnitude)). The terms are therefore not indefinite because "[i]t is well established that when the term 'substantially' serves reasonably to describe the subject matter so that its scope would be understood by persons in the field of the invention, and to distinguish the claimed subject matter from the prior art, it is not indefinite." *Verve*, 311 F.3d at 1120.

Defendants incorrectly argue that cases finding the term "substantially" definite should be disregarded because they are pre-*Nautilus*. The Supreme Court in *Nautilus* considered

whether the "insolubly ambiguous" standard was appropriate for indefiniteness. *Nautilus, Inc. v. Biosig Instr., Inc.*, 134 S.Ct. 2120, 2124 (2014). The cases relied on by Magnacross did not apply the "insolubly ambiguous" standard. Instead, consistent with the standard later set forth in *Nautilus*, the cases held that the term "substantially" described the claimed subject matter with reasonable certainty so that the scope would be understood to those skilled in the art. *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed.Cir. 2002); *Ecolab Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed.Cir. 2001). The holdings of the cases are therefore applicable to whether the term "substantially" is indefinite.

Defendants' attempt to distinguish *Verve* is incorrect. Defendants agree that the term "substantially constant" in *Verve* was definite because it "clearly signifies little or no change from a known or unknown quantity." (Dkt. No. 216 at 18). If a person skilled in the art would understand "substantially constant" (*Verve*) or "substantially uniform" (*Ecolab*), a person skilled in the art would understand "substantially different." Consistent with understanding "substantially constant"/"substantially uniform" and "differing substantially"/"substantially different," the prior art was distinguished in the prosecution history by explaining that the invention would be unnecessary if the data rates were the same. (Ex. F at MAG000037). The term "substantially" is therefore used in the '304 patent to describe with reasonable certainty the scope of the invention to a person skilled in the art and to "avoid a strict numerical boundary to the specified parameter." *Verve*, 311 F.3d at 1120 (*quoting Ecolab*, 264 F.3d at 1367).

The scope of the terms "differing substantially" and "substantially different" is not indefinite because they are necessary to secure the benefit of the scope of the invention and a person skilled in the art would understand with reasonable certainty the scope of the claims.

## CONCLUSION

For the reasons stated above, Magnacross respectfully requests that the Court construe the terms as proposed by Magnacross and find that no terms are indefinite.

Dated: April 1, 2016                    Respectfully submitted,

                                             By: */s/David R. Bennett*
                                                   David R. Bennett
                                                   Direction IP Law
                                                   P.O. Box 14184
                                                   Chicago, IL 60614-0184
                                                   Telephone: (312) 291-1667
                                                   e-mail: dbennett@directionip.com
                                                   **ATTORNEY FOR**
                                                   **PLAINTIFF MAGNACROSS LLC**

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 1, 2016, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                */s/David R. Bennett*
                David R. Bennett